Good morning and welcome to the Ninth Circuit. I hear we have a bunch of high school students from Hillbrook, is that right? Welcome. I look forward to chatting with you all after oral argument today. Before we begin, Judge Gould and I would like to thank Judge Seawright from Hawaii for visiting with us. It's a big help and it's a pleasure to be sitting with you today. Thank you. Okay. We have three cases submitted on the brief and three cases being argued. I will go ahead and submit the three cases first. Robilar v. Garland will be submitted on the brief as of this day. Motion v. California Department of Water Resources will be submitted as of this day. And the United States v. Mulligan will be submitted as of this day. The first case for argument is Byrd v. Dzurenda. Counsel, whenever you're ready. Judge Boumediere, I just want to make sure that you can hear me. Yes. Thank you. You are loud and clear. I'd like to review our rebuttal. Sure. Okay.  I'd like to thank the members of the panel for giving me this opportunity to present my arguments. The district court erred when denying Officer Atherton and Parriga's motion for summary judgment because they are entitled to qualified immunity, as they did not violate a clearly established constitutional right. Byrd lacks material admissible evidence establishing beyond debate all five elements of a retaliation claim under the First Amendment. First, Byrd's refusal to house in his current cell, which Byrd admits violated NDOC rules and subsequent demand to be moved at once due to undisclosed issues with his current cellmate, if left unaddressed, would lead to a fight. It's not protected speech, especially when Byrd refused to say who would be, whether he or his cellmate would be the one that would start the fight. Contrary to Byrd's newly-minted argument. Continue. Is the case of freedom of speech case, or is it a petition of grievance case under the First Amendment? No, it's a First Amendment case because it's a retaliation claim. But is it retaliation for filing a grievance, or is it retaliation for speech, or does it not matter? Well, it's retaliation for demand. He didn't have any protected speech. He was demanding a cell move. I mean, he didn't file a grievance. No, if that's the question, he never filed a grievance. Right. So it's not a petition of grievance case. Right. But all the clearly established law cited by the other side was, are they petition of grievance cases? I believe so, Your Honor. So does that knock it out based off of that? It does, especially considering it's qualified immunity. You have to have it clearly established, and it has to be, you know, within the, you know, it doesn't have to be exact, but it has to be close. And it can't be. And, in fact, if you look at the Carley case, the recent by this Court, I think that pretty much, Your Honor, right, that that pretty much knocks this case out of the water. Because, like you said, Your Honor, Berg never sought any redress for any misconduct by prison officials necessary to be one of the limited, because prisoners only have a limited First Amendment right retained by prison. Nor could he, because he got what he wanted in the end. He got a cell move. When Officer Honecker ordered Berg to stay in his cell, Berg insubordinately responded, no, sir, I'm not. You can't have prisoners doing that, thus refusing a direct order to remain in his cell. Without any allegation that Berg's cellmate had threatened Berg, and there is no allegation that Berg's cellmate, although they want you to say there is, but there isn't, a reasonable officer in abandoned shoes would have been deemed, would deem Berg's demand for an immediate move as unprotected, unsubordinate ultimatum in violation of NJ57, to which Berg pled guilty. As this Court held in Watkins, Berg cannot rely on an act of speech that he concedes violates a legitimate prison rules as the basis for his speech, for his speech retaliation claim, because confrontational disorderly manner in which the inmate complained about the treatment removed the grievance for First Amendment protection. And I'd also like to, I don't want to go into it, but you can read my briefs about the Calhoun case of the Seventh Circuit, which pretty much is indistinguishable from the facts of this case. Berg has filed to cite any definite authority that squarely governs the specific facts of issues that establishes beyond debate that an inmate's demand for an immediate move for admitted insubordination was, in a violation of prison election, was protected speech. In Rhodes, Brodin, and they're all cited by them, unlike this case, the inmate was not insubordinate, but sought to remedy prison injustices, which is one of the limited First Amendment rights still afforded to prisoners. Before the district court, Berg never argued that demanding a cell move was an attempt to informally resolve agreements, as they claim now. And it wasn't, because he wasn't, there had no grievance. Berg never asserted any injustice caused by prison officials, did not threaten to file a grievance, or even claimed that a cellmate had threatened him in any way. Berg admits that he was provided the requested move and, therefore, had no reason to file a grievance. No court has held that an insubordinate demand for a move without asking to redress for any wrongdoing by prison officials or any indication that cellmate had threatened him in any way was protected speech. Can you explain what the context of the statement, fight him or fight me, is and how that's legitimate? Okay. Well, the thing is, is, okay, you know, of course our officers say they never said that, but we have to assume for the purposes of summary judgment. But the thing is, you know, if the cellmate is saying, hey, fight him or fight me, right, he's not threatening any fight. He's saying, hey, you're going to have a fight on your hands. You're going to have, and you've got to also think of this in the prison context. These are prisoners. These are not, you know, people, you know, your Sunday school girls who are. Do it as a verbal fight, not a physical fight? Or are you saying that even if it was. From the point of a reasonable officer, because we're here at Qualified Immunity. So you have to look at it from what an officer would say. He's telling Byrd, hey, you've got to move, you've got to either move, stay in your cell, or you're going to have a fight on your hands, you know. And since he didn't claim that his cellmate was ever going to fight him, you know, he's kind of a thing saying, hey, you know, you're not claiming that your cellmate's fighting you yet, you know. So it's better that you fight, you know, you go after, you know, stay in your cell with your cellmate than you come out with me. And like I say, you have to look at this from a prison context by a reasonable prison official. You know, prison officials, prisoners are hardly using, you know, genteel language. It's not surprising that a prison official, when you have an inmate that is trying to insubordinately say, no, I'm not going to follow your orders, to tell them, yes, you are. And I don't think if you found this to be protected speech, there would be nothing left of it. Everything an inmate would say would be protected speech and fallen dirt. And that would be absolutely contrary to the Supreme Court precedent that says, hey, inmates only have limited First Amendment rights. It's a very small, narrow gap of things that they can do in prison. And it's not like religion. Religion is a whole different thing. You have, of course, the RLUIPA, which guarantees prisoners broad things that it has to go under strict scrutiny. But that doesn't happen in the First Amendment retaliation context.  What are you to do with the dispute of whether or not his items in his possession were contraband or not, and the list was not necessarily properly maintained? But the rule is undisputed, what the rule provides. He can say, I mean, if the inmate can say, I don't have to follow prison rules because the rule isn't being enforced uniformly, well, guess what? You're going to be able to have prisoners coming here every day of the week saying, hey, I don't have to follow that prison rule because guess what? It's not enforced uniformly. That's not an argument. You know, just because it says it isn't. But what it says is there is no exception in the prison rule. You read the rule, and there's no exception there for saying, hey, I don't have to put this on my property card. And so the reason why it's clear, Your Honor, why you have to put that stuff on your property card, because just for example, this is a great example. We have a prisoner claiming he had property that most likely he never possessed. I mean, how would you stop that? How would you stop a prisoner? Or even worse, you have a prisoner stealing property, which goes on all the time, and saying, stealing property, and says, oh, this is my property. Not on your property card. That's how we determine whose property is whose property in prison. If it's not on the property card, it's not their property. And there is contraband, and it can be confiscated at any time. Going back to backing up a few steps, the district court did call Mr. Byrd's statement a grievance. That's how she referred to it in her order. You disagree with that, I take it. Well, yes, I do disagree with the grievance because there's the fact that I would like somebody to point to me in a place where he says it's a grievance. So what is the line between a grievance and just making a statement? Is there any case law that establishes that line? Say, for example, in this case. Okay? So you have a case, and you actually have Byrd saying that my cellmate is threatening me. Right? Which is, you know, we want to take care of that kind of thing. We don't want to have people getting beat up in prison. Well, guess what? That there's a thing called an emergency grievance that you can file in writing immediately. He could have asked for an emergency grievance. I'm going to be threatened by my cellmate. I want an emergency grievance. You put it down in writing right then. You file it. You get an immediate response, pretty much. And that's how you do it. In writing to be a grievance. A Ninth Circuit precedent doesn't have to be in writing, but under NDOC regulations it does. Judge Gould has a question. Judge Gould. Yes. I have a question for you. I have the same question that Judge Seabright asked. Do we have any existing Ninth Circuit precedent that says that the type of verbal statements made here constitute a grievance? We don't have anything that says it constitutes a grievance. We have the closest thing probably you have is the ‑‑ I think it was the Rhodes case is what they cite. But the thing is what he was doing, though, is he was seeking redress for a correction officer that was saying, hey, if you don't do what I tell you, I'm going to ‑‑ I mean, if you keep filing these grievances against me, I'm going to transfer you. And so he made a direct threat against the inmate and said that. And so that's why they said, hey, when he's trying to remedy that, that's protected speech. But here no officer did anything to him. I mean, so that's why it's not protected. You cannot have an inmate saying, hey, I am just not going to do what you say, which is what we have here. Fine. Unless you have any other questions. Okay. Thank you. Good morning, Your Honors, and may it please the Court. Lindsay Franklin on behalf of Keith Byrd. This Court should affirm the denial of qualified immunity for three reasons. First, appellants' arguments are based on construing the record in the light most favorable to defendants. That is the opposite of what this Court's standard requires, which is to draw all factual ‑‑ all reasonable inferences in favor of Mr. Byrd and to resolve all factual disputes in his favor. Second, this Court's binding precedent makes clear as a matter of law that threatening an incarcerated person with physical violence and confiscating his property, here religious materials were included in that, his Quran and his prayer rug, in retaliation for lodging of grievances violates the First Amendment. Third, because this Court's decisions were issued well before 2018, the defendants here had years' worth of fair notice that their conduct violates the Constitution. Let's talk about that for a minute, because the district court did use a very broad just First Amendment retaliation standard, right, as the clearly established law. But this case does feel different. There was no grievance about an officer or about the institution itself. It was a statement about, you know, help me get out of this situation I'm in. Certainly if they did nothing and then he said, hey, I warned you and you did nothing, that becomes a grievance. But why should we, number one, consider it a grievance? And even if we do, what clearly established law is there such that we should consider it clearly established? Sure, Your Honor. So under Brodheim, this Court said that any statement that is part of the grievance process is protected activity. And here Mr. Byrd did exactly what was required under the NDOC's procedures, which is to first raise any issues through discussion with staff before filing a written grievance. And relatedly, this Court held in Entler that oral grievances are protected conduct. And here Mr. Byrd's concern goes to the heart of prison's duty to protect incarcerated people from the hands of violent, you know, violent inmates. And so this was definitely a grievance under this Court's case law. But I'm not sure if that's correct. I mean, in Brodheim, there was many, many steps after the fact of the first initial grievance that led to the retaliation. Here, it's all one step, right? Like, in Brodheim, there was something to grieve about. I forget what the facts were. And then he complained to an officer. The officer denied it and then retaliated after the fact. Is that the instruments? Well, anyway. So there's all these steps that happen. Like, you know, a grievance. Something to complain about. It grieved to the officer. The officer denies the grievance. And then there's a retaliation based off of that grievance. Here, we don't have that chain of causation. So I don't understand how we could be in clearly established law here. Well, the grievance doesn't need to be denied for an officer to retaliate against an incarcerated person for having raised the grievance. They can still even grant, as was the case here, they can grant the relief that was requested. But the inquiry is whether there's an adverse action in retaliation or because of the protected conduct. And Mr. Bird's speech was protected conduct. Well, let me put it this way. Can you name a case that provides clearly established law that's saying that we don't need all these steps, intermediate steps in between, to prove a retaliation claim? I think in Entler, that would be the case because there, the incarcerated person or actually, well, Entler cites Jones. In Jones v. Williams, the incarcerated person approached an officer and complained about threats of discrimination, and he was accordingly written up. And that was the retaliation. But again, in Entler, this court was clear that an oral grievance is protected conduct, so any adverse action taken because of that protected conduct is violative of the First Amendment. But the question becomes what is protected conduct, right? It's constitutionally protected conduct. We use shorthand to just say protected conduct, but we're talking about constitutionally protected conduct. And it seems people are, the court below at least, just assumed this was a grievance. And to me, when I looked at the case law and cases I've handled in the past, grievance that I've seen is always about something the institution has done in some way, whether it be an officer. You know, it's I'm not being given the meals I need for my religious practices. I'm not being given the time I need for this, you know, whatever it is. It's about the institution doing something. So can you tell me any case that has said making a statement, not complaining at all about the institution itself, but complaining about another inmate can give rise to a First Amendment retaliation claim? Is that clearly established? Standing before you, nothing is coming to mind as a particular complaining about something that the institution didn't do, but I think taking a step back, Mr. Bird was placed into the cell by the institution three days prior to his lodging of grievance, saying I need to be moved to a different cell. And that's exactly the kind of thing that the institution is able to remedy. And the institution alone is able to remedy. And the NDOC's grievance procedures kind of define what a grievance is under their own definition. And so that's in the record at page 175. And they say it has to concern a loss or harm. It has to relate to the conditions of confinement. And it has to be within the ability of the staff to address. And all those things are the case here. When he raised his grievance, it was all within the realm of the ability of prison guards to address. And it related to the risk of a loss or harm, which was his personal injury from his cellmate. I guess my confusion, you're saying the statement to, I forget the first officer's name, that I need to be moved because my – that's the grievance? Yes, that's the protected conduct. But they were not – that's not even denied. So you're not grieving anything that the institution has denied? I don't think there has to be something that the institution has denied in order for there to be a grievance. I think they can complain that their property was taken by a fellow inmate, and that would be a grievance under the NDO's procedures. Let me ask this. The officers allegedly – and I can agree that, you know, for this discussion, there's sufficient evidence that these two officers took his items out of his cell. But they did it after he pushed that tub in the door and refused to leave. So why isn't any – even if you're right, why isn't there a break in causation here? It seems to me just common sense-wise, you know, if someone's going to retaliate, it's not based on just saying I'm having trouble with an inmate. It's because I'm ordering somebody to do something, and they say no in a prison setting. Sure. And then the adverse action happens, right? So even understanding the summary judgment standards and so forth, why isn't that just a breach in the causation? Sure, Your Honor. I don't think it's a breach in causation because the incident in the cell in which he pushed the tub involved Officer Hunker, who is not a party to this case. The defendants in this case are Priega and Atherton, and there's nothing in the record suggesting that they were present for that incident or even knew about it. So, again, construing the record in the light most favorable to Byrd, we have no reason to believe that they even knew that that had occurred. And so there's no break in causation between the grievance and the property confiscation. Judge Gould, do you have a question? I have a question for you. Is there any Supreme Court authority defining what a grievance is? Standing before you today, I can't think of that in particular. However, in Pell, which we cite in our brief at page 11, it stated that the Supreme Court stated that incarcerated people retain all First Amendment rights that are not inconsistent with their status as incarcerated or with legitimate penological goals. And so here there was nothing about Byrd's statement that was inconsistent with his status as incarcerated. And as a result, I think it would be protected conduct because he retains that First Amendment right. Counsel, what's your best case authority in the Ninth Circuit that this is a grievance? I think the best case authority would be a combination of Entler and Jones v. Williams, which is cited in Entler, for which Your Honor was on the panel, in which it said that oral grievances are protected conduct. Thank you. Could you respond to your opposing counsel's argument that it doesn't matter whether or not possessions are on the list and whether or not that's selectively enforced? It doesn't matter for this purpose? I don't think that's right because this Court made clear in Shepard and in Bruce that the prison guards can't use a valid prison procedure as a ruse or as a justification for retaliatory conduct. There has to be, under the circumstances, the enforcement of the rule has to be advancing a legitimate penological goal. And so here it does matter. If the property is never listed on property cards, there was really no reason for the confiscation if they didn't know what was contraband and what was not, what was unlisted and what was not. And I think it's also important here. I see I'm running out of time. May I finish? Oh, yeah, please. I think it's also important here that the defendants have not submitted anything in the record clearly showing that the property was, in fact, unlisted on the property cards. They submitted a property card at 150, but it is neither dated nor signed, and none of the verifications in the record support that it reflects Mr. Bird's property card at the time of the incident. I thank the Court for its time and respectfully ask that it affirm the denial of qualified immunity. Thank you, Counsel. We'll give you one minute. I'd like to talk a little bit about the grievance because I think that's been an issue here. I don't think you have to go any further than when Officer Peregrin and the appellants were talking to the defendant and they were asking him and saying, Hey, who's going to fight? Who's going to start this fight, you or your fellow mate? And Bird refused to answer. I mean, if he was actually doing a grievance, then he would have said, Yeah, my fellow mate's going to kick my butt or something along those lines, right? What he was doing is not a grievance, but he was a request. Well, in simple terms, but it wasn't really a request. It was a demand. I want to be moved. You've got to move me. And that's just not the way prisons work. What do you say about the causation argument? Well, the causation, well, first of all, without any protected speech or any adverse action. I'm talking about the break-in chain of causation. Well, the thing is, I don't think there even has to be a break-in chain of causation. There's no evidence establishing any kind of causation other than timing. Timing does not establish causation. And so I guess I'm out of time, Your Honors, and I really appreciate the opportunity to speak with you. And I would respectfully request that you reverse the district court and order them to enter summary judgment on behalf of appellants. Thank you very much. Thank you, counsel. This case is submitted.
judges: GOULD, BUMATAY, Seabright